**EXXON CORPORATION, Plaintiff,**

v.

**DEPARTMENT OF ENERGY, et al., Defendants.**

**Civ. A. No. 78–0531.**

United States District Court, District of Columbia.

Sept. 28, 1983.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

This action concerns certain requests of plaintiff, Exxon Corporation ("Exxon"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 for records kept by defendant, the Department of Energy ("DOE"). At an earlier stage of this litigation, this Court, upon consideration of motions filed by both parties, ruled that Exxon's FOIA requests were "reasonably descriptive of materials sought" and ordered

DOE to undertake a search for documents responsive to those requests.[1]

Thereafter, DOE conducted a search for such documents. DOE identified over 3,000 documents responsive to the requests at issue, and released more than 2,500 to Exxon. DOE released segregable portions of many of the approximately 500 remaining documents, asserting that all withheld information was exempt from disclosure under FOIA Exemption 5 as "deliberative process" material. DOE further asserts that some of these documents are also privileged under that exemption as attorney work-product or attorney-client documents. Because DOE previously raised similar exemption claims for over 200 of these documents in its enforcement action against Exxon, *United States v. Exxon Corp.*, Civil Action No. 78–1035, the parties stipulated that the releasability of those documents would be determined in that case. Therefore, the releasability of those documents is not at issue here. Consequently, 245 documents remained at issue at the time DOE filed the instant motion. Exxon's opposition challenges DOE's assertions of privilege with respect to most, but not all, of those.

The procedure by which DOE undertook its search and the grounds for its assertions of privilege are set forth in the affidavits of DOE attorney Bayle S. Weiner and the lengthy *Vaughn* index filed with the Court. DOE moved for summary judgment on the basis of the affidavits and index, and that motion is now ripe for decision. (Exxon's response to the motion was stayed pending *in camera* examination of certain draft documents it believed would support its contention of bad faith on the part of DOE; such review yielded no evidence of bad faith. Order of November 1, 1982.) Exxon's motion for partial summary judgment, in which it asserts that DOE's search was deficient and its claims of exemption unjustified, is also ready for consideration.

As explained below, the search DOE undertook was adequate and the material withheld generally is privileged by Exemption 5. DOE shall be ordered to produce to Exxon those few documents or portions of documents it improperly withheld. In other respects, DOE's motion shall be granted and Exxon's denied.

### I. Adequacy of the Search

The requests at issue are those previously referred to as Request II (Parts 1 and 2) and Request III. In Part 1 of Request II Exxon sought a wide range of material concerning the computation of a "base production control level" ("BPCL") for a "unitized property" as those terms were used in connection with petroleum price regulations. Part 2 of the request sought certain opinions issued or used by the Office of Regional Counsel, Region VI. Request III sought documents concerning the background and goals of DOE's August 22, 1973 definition of a BPCL. DOE previously contended that Request II, Part 1 and Request III did not reasonably describe the desired documents; this Court, as noted above, ruled to the contrary. With respect to Request II, Part 2, DOE released all but one of the 18 requested opinions, claiming that the remaining document could not be located. The Court directed DOE to "once again retake a good faith search, with a deliberate and dedicated look, to locate the document," yet noting that "to order the Department to produce what it cannot find, would be senseless." Search Order at 2.

### A. Methodology of the Search

 In determining whether an agency's search was sufficiently thorough, a court may rely upon affidavits, provided that they are "relatively detailed" and nonconclusory. *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C.Cir.1983); *Goland v. CIA*, 607 F.2d 339, 352 (D.C.Cir.1978). The three Weiner affidavits set forth, with sufficient detail and in a nonconclusory manner, the methodology used in DOE's search.

**1.** Order of June 26, 1981 [hereinafter referred to as "Search Order"].

### 1. Request II, Part 1

In coordinating the search for documents concerning computation of BPCLs, Weiner consulted other attorneys in DOE's Regulatory Litigation Section involved in litigation relating to matters similar to Exxon's FOIA request. As a result, eleven offices within the agency were identified as possible repositories of responsive documents. DOE also determined that 94 individuals be required to search for documents, including the 50 persons listed in Exxon's request. Because some of those 94 individuals were no longer with the agency, all offices and persons directed to make searches were also asked to report as to files relating to any of those individuals or their offices.

Each of the individuals and offices participating in the search received copies of Exxon's FOIA request, the Court's Search Order, and a list of the individuals identified by Exxon's request. A comprehensive instructional memorandum from the DOE Deputy General Counsel was also included in the package. This memorandum advised the individuals and offices that to a large extent they might already have completed the search in conjunction with earlier discovery efforts in the *United States v. Exxon* enforcement action and two other cases. Accordingly, those required to perform searches were informed that they need not duplicate previous efforts, although they were directed to indicate in their responses to Weiner the particulars of any relevant prior searches. The memorandum, as later supplemented, also advised the searchers that they were not required to search audit files or Regional Counsel individual enforcement case files. (Nevertheless, some enforcement files were searched and documents therefrom identified. *See Vaughn* index, *passim.*) This search, which was required by the Court to be completed in 60 days, yielded approximately 3100 documents. *See* First Weiner Affidavit, *passim.*

Exxon argues that DOE improperly excluded audit files and case files from the search, claiming that since Request II sought *all* documents under the agency's control pertaining to the computation of a BPCL for unitized properties and since the Search Order did not specifically exclude such files, DOE was obliged to extend its search to those locations. With respect to the audit files, DOE asserts that a search of "every one of the thousands of audit files spread across the country" for documents responsive to Exxon's request "would literally take years." DOE Opposition at 15; *compare United States v. Exxon*, 87 F.R.D. 624, 634–35 (D.D.C.1980) (terming a search for final audit reports instead of a search of each audit file a "reasonable" procedure). Likewise, a search of every enforcement file would have been no small task.

Such an expansive search certainly was not contemplated by the Search Order. In presenting the Court with arguments that were ultimately persuasive on the question of whether its FOIA requests "reasonably described" the material sought, Exxon asserted that its requests were not "limitless," as DOE characterized them, but instead narrow and manageable. Exxon had challenged DOE's claim that the requests were unreasonably broad by noting that "plaintiff has identified some 50 specific files to be searched *and asks this court only to compel defendants to search these files and the files in the General Counsel's office.*" Exxon Memorandum of May 10, 1979 at 17 (emphasis added); *see also id.* at 5 ("defendants must be compelled to search the files named in plaintiffs [sic] requests and the Office of General Counsel" for responsive records) and Proposed Order No. 1 to Exxon Memorandum of April 19, 1979 at 2 (seeking searches of files of named individuals and Office of the General Counsel).

■ Exxon's self-imposed limitations on its requests were essential to the Court's conclusion that a document search reasonably could be undertaken on the basis of the descriptions submitted to the agency. The 60-day limit imposed by the Search Order reflects the fact that the Court took such limitations into consideration in fashioning the relief ordered. That limit like-

wise inherently mandated that any duplication of searches already conducted—such as in the enforcement action, *see* 87 F.R.D. at 634 (ordering searches of enforcement files)—be avoided. Accordingly, DOE's decision to exclude the many audit and enforcement files from the search was a reasonable and appropriate tailoring in light of Exxon's representations and consistent with the Search Order. *McGehee v. CIA,* 697 F.2d at 1100–01.

Moreover, the means used by DOE to determine the distribution list for the search package was adequate. Weiner appropriately consulted agency personnel most likely to have familiarity with the matters at issue in the requests, attorneys in the Regulatory Litigation Section of the Office of General Counsel who had handled litigation relating to similar matters. As noted above, they identified eleven groups of offices likely to possess responsive documents: (1) the Economic Regulatory Administration, (2) the Federal Energy Regulatory Commission, (3) the Office of Hearings and Appeals, (4) the Deputy Secretary's office, (5) the Office of Regulations and Emergency Planning, (6) the Office of Operations Planning and Evaluation, (7) the Office of the General Counsel, (8) the Office of the Special Counsel, (9) the Regional Counsel offices, (10) the Office of Enforcement District Managers, and (11) the Office of the Special Counsel for Compliance—Districts. First Weiner Affidavit, ¶ 4. Furthermore, by including a copy of the distribution list in the instructional package and directing all searchers to inform Weiner of any files relating to the 94 individuals listed, DOE provided a useful "check" to ensure the thoroughness of the search.

Finally, the instructions provided to the searchers were complete, detailed, and more than sufficient to make certain that proper searches would be performed.

### 2. Request II, Part 2

Despite a second attempt to locate the missing Region VI opinion described by Exxon as "75–49 addendum," the document remains undiscovered. After an extensive search for such a document, *see* Second Weiner Affidavit, it appears that "75–49 addendum" either never existed or refers instead to Opinion 75–71 (an opinion related to Opinion 75–49) or the file of Opinion 75–71. In any case, the status of this document evidently is no longer disputed by Exxon.

### 3. Request III

The same methodology employed in the search for documents responsive to Request II, Part 1 was also used in the search for Request III documents. Weiner consulted attorneys in the Regulatory Litigation Section familiar with similar matters; from this, a list of four possible repositories evolved. They were: (1) the Assistant General Counsel for Petroleum Regulations, (2) the Acting Chief Historian, (3) the Manager, Tertiary Enhanced Recovery Program, and (4) the Acting Director, Program Operations, Economic Regulatory Administration.

While Exxon evidently believes that more persons or offices should have been identified, it does not suggest who was improperly excluded—except to note that the four are national-level officials yet Request III as written also encompassed regional and area offices. However, Request III concerned a higher-level decision than Request II, Part 1: the *promulgation* of the regulation defining BPCL rather than the *practical use* to which that regulation was put. As such, the fact that the only officials identified were national-level ones does not render DOE's distribution list for Request III unreasonable. It was appropriate for DOE to look to such high-level officials for information of this kind and consistent with its duty to take reasonable steps to uncover requested documents. *McGehee v. CIA,* 697 F.2d at 1101. The search was sufficiently thorough without having been expanded to lower-level personnel.

Nor does the fact that these officials located no responsive documents that had not already been produced cast doubt upon the adequacy of the search. It is not unreasonable to expect that such documents had already been provided to Exxon in the

course of the enforcement action. No fault is found with this search.

## B. Bad Faith

■ Exxon asserts that instances of alleged bad faith on the part of DOE in responding to the FOIA requests and in the course of this litigation impugn the credibility of the Weiner affidavits and *Vaughn* index. Indeed, while evidence of bad faith may render an agency's affidavits insufficient to support a finding that an agency's search procedure was reasonable as a matter of law, *McGehee v. CIA*, 697 F.2d at 1102, as explained below, the record does not demonstrate such bad faith in this case.

In *McGehee*, the Court of Appeals found in the record "significant evidence" suggesting that the CIA did not process the plaintiff's request for information concerning the Jonestown, Guyana tragedy in good faith. It arrived at its conclusion on the basis of two facts: that the CIA took almost two and one-half years before it processed the plaintiff's "reasonably straightforward" request (and then only after ordered to do so by the District Court), and that the CIA employed a secret policy of limiting searches to documents existing on the date of the request. 697 F.2d at 1113. There was also in the record a suggestion that the CIA had limited its searches to files denominated "People's Temple" and failed to look for information under any closely-related topics such as the Rev. James Jones or Jonestown, although the court did not explicitly cite this as an example of bad faith. *Id.* at 1100.

■ Exxon's primary challenge to DOE's good faith relates to the agency's assertion that the FOIA requests were not reasonably described. Yet this Court did not find DOE's contention spurious or frivolous in the Search Order, and does not do so now. Exxon at one time believed that DOE seized upon the reasonable description requirement as a means of blocking or delaying the processing of Exxon's requests, and asserted that evidence of such

a tactic would be revealed upon examination of two documents identified as the "Kielman Memorandum" and the "Rockwood Drafts." An *in camera* examination of those documents yielded no such evidence.[2]

■ The fact that initially some employees were able to find materials responsive to Exxon's requests, *see* Search Order at 4, does not mandate the conclusion that DOE interposed its reasonable description defense in bad faith. Often, a FOIA request may reveal itself not to be reasonably described only after some processing has been undertaken. Almost any request could conceivably yield some responsive documents. To take an extreme example, DOE certainly would be able to locate some documents responsive to a request for all documents containing the word "petroleum." But that does not mean that such a request is reasonably descriptive of the information the requestor seeks.

Moreover, that DOE ultimately was able to search for and identify responsive documents does not prove that its contention that Exxon's requests were not reasonably descriptive was taken in bad faith. As noted above, DOE's search was facilitated by the guidelines presented through the Search Order as well as Exxon's representations as to the "core" of documents it sought. DOE did not have the benefit of such assistance when it first was presented with Exxon's requests.

■ Finally, Exxon's suggestion that the participation of attorneys in the Office of Special Counsel for Compliance—enforcement staff—in responding to the FOIA requests demonstrates bad faith is of little moment. DOE notes that this office was a possible repository of responsive documents. In any case OSC's involvement with the requests appears to be well removed from the actual search conducted by the Regulatory Litigation Section. No evidence to impugn the search is shown here.

Nonetheless, although the facts of the instant case are distinguishable from the

2. Order of Nov. 1, 1982.

lengthy period of inaction and the use of secret procedures condemned by the Court of Appeals in *McGehee*, the finding here of no bad faith most certainly is not to praise DOE's approach to this case as a model of conformance with the requirements of FOIA. It appears that better cooperation—on both sides—would have facilitated satisfactory processing of Exxon's requests at a much earlier stage.

## II. Sufficiency of the *Vaughn* Index

■ The first Weiner affidavit and the appended index describing the withheld material provide an adequate basis upon which the Court may assess DOE's claims of privilege. Each piece of withheld information is described in a particularized statement, from one to several pages in length, indicating the content of the document, the names of the document's author and recipient (where known), its date, the exemptions claimed, and the basis for such claims. These statements were prepared in accordance with the sample index distributed to the searchers in their information packages, and the claims of privilege asserted therein were reviewed by Weiner. First Weiner Affidavit at 6. The affidavit groups the various bases upon which privileges are asserted into a number of categories. Together, the index and affidavit provide enough information to render an *in camera* examination of the hundreds of documents unnecessary; as such, the Court exercises its discretion not to order *in camera* production of the documents. *EPA v. Mink*, 410 U.S. 73, 93, 93 S.Ct. 827, 838, 35 L.Ed.2d 119 (1973); *Vaughn v. Rosen*, 484 F.2d 820, 824–26 (D.C.Cir.1973).

## III. Assertions of Privilege

Exemption 5 provides that FOIA does not apply to matters that are "inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). As noted above, DOE contends that all withheld material falls within one or more of these three components of Exemption 5:

the deliberative process privilege, the attorney work-product privilege, and the attorney-client confidential communication privilege. The affidavit groups the documents in dispute in three categories: (1) draft documents, (2) documents concerning audits, enforcement proceedings, or similar matters, and (3) documents concerning policy decisions. DOE asserts that all material it withheld is protected by the deliberative process privilege and claims the other two privileges for a number of the "enforcement" documents. The general assertions of privilege are discussed immediately below. Conclusions as to the releasability or exempt nature of the specific documents at issue are discussed thereafter in Part IV.

### A. Deliberative Process Privilege

■ This privilege exempts from disclosure documents that are "predecisional" (*i.e.*, created before the agency issued its final decision on a matter) and "deliberative" (*i.e.*, reflecting the give-and-take of consultation). *See Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C.Cir.1980); *Texaco v. Department of Energy*, 4 Energy Mgt. (CCH) ¶ 26,302 at 28,344 (D.D.C.1981).

■ As the Court of Appeals held in *Coastal States*, the exemption covers "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." 617 F.2d at 866. It privileges disclosures that "would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is yet only a personal position." *Id.* The test for this is "whether the document is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency." *Id.* Courts examine the tenor of a disputed document to determine whether it is recommendatory or deliberative in nature. *Id.* Finally, a document, although "predecisional" when created, may lose such status if it is "adopted formally or informally, as the agency posi-

tion on an issue or is used by the agency in its dealings with the public." *Id.* Internal, undisclosed memoranda which become relied upon by the agency as precedent—"secret" or "working" law—therefore may be denied the protection of the privilege. *Id.* at 867.

The deliberative processes to which the documents assertedly are relevant concern various efforts to regulate petroleum pricing undertaken by DOE and predecessor agencies beginning in 1973. The regulations essentially permitted producers to charge higher prices for "new" oil than they were allowed to charge for "old" oil. Between 1973 and the filing of the FOIA requests, DOE was involved in policy determinations and rulemaking proceedings directed at implementing the objectives of the two-tier pricing scheme. DOE was also engaged in pertinent enforcement activities.

How the privilege generally applies to the documents in dispute is discussed with respect to the three categories of documents *seriatim.*

### 1. Drafts

Draft documents, by their very nature, are typically predecisional and deliberative. They "reflect only the tentative view of their authors; views that might be altered or rejected upon further deliberation either by their authors or by superiors." *Pennzoil v. Department of Energy,* 4 Energy Mgt. (CCH) ¶ 26,340, at 28,606–07 (D.Del. 1981). The Court of Appeals in *Coastal States,* as noted above, identified draft documents as a proper subject of the deliberative process privilege, 617 F.2d at 866. Moreover, such materials were held exempt from discovery on this ground in the enforcement action parallel to this case. *United States v. Exxon,* Civil Action No. 78–1035 (D.C.D.C. Jan. 22, 1982).

As will be evident in Part IV, DOE has demonstrated that this privilege properly applies to the great majority of draft documents identified in this case. Most of these documents are identified as drafts of

specific "final" documents, and their place within the deliberative process is clear from the *Vaughn* index. In some instances where DOE has failed to identify a final document corresponding to a putative draft, the "draft" shall be ordered produced to the extent that the agency has provided no basis for determining that it in fact has such status.

■ Yet, there is no merit to Exxon's argument that in order to establish the privileged character of a draft, DOE must show to what extent the draft *differs* from the final document. The effect of this would be to expose what occurred in the deliberative process between the draft's creation and the final document's issuance. Similarly, the agency is not bound to disclose every segment of a draft that happens to make its way into the final product. "If the segment appeared in the final version, it is already on the public record and need not be disclosed. If the segment did not appear in the final version, its omission reveals an agency deliberative process: for some reason, the agency decided not to rely on that fact or argument after having been invited to do so." *Lead Industries Association v. O.S.H.A.,* 610 F.2d 70, 86 (2d Cir. 1979). In the instant case, final versions of withheld drafts generally have been released.

Exxon also appears to claim that all factual material in the drafts (as well as in the policy and enforcement documents) must be disclosed. Yet while purely factual material is not exempt, it must be disclosed only if "reasonably segregable" from privileged material. 5 U.S.C. § 552(b). Like the *Lead Industries* court, the Court of Appeals for this Circuit has made it clear that there are circumstances where "the disclosure of even purely factual material may so expose the deliberative process within an agency that it must be deemed exempted by section 552(b)(5)." *Mead Data Central, Inc. v. United States Department of the Air Force,* 566 F.2d 242, 256 (D.C.Cir.1977).[3] As will be seen below

---

**3.** The same applies to discussions of existing law: although such material does not fall within

in the analysis of the individual documents, DOE generally made a studied effort to segregate and disclose exempt material wherever possible and for the most part has withheld factual material only where incidental to the protection of properly privileged information.

The analysis of the numerous individual draft documents was aided by the fact that the Weiner affidavit placed the withheld draft material in eleven subcategories representing different stages of DOE investigative and enforcement activity. This usually precise categorization in most cases provided ample means with which to determine to what type of agency action each draft pertained. The subcategories identified by Weiner are as follows: (1) draft Notices of Probable Violation ("NOPVs"), Proposed Remedial Orders ("PROs"), and Remedial Orders ("ROs"); (2) draft Interpretations (interpretations of specific factual situations issued by DOE at a firm's request); (3) draft Decisions and Orders ("D & Os") (issued by the Office of Hearings and Appeals in response to a firm's request for relief from DOE regulations); (4) draft Consent Orders; (5) draft documents relating to NOPVs, PROs, and ROs; (6) draft rulings, regulations, and documents analyzing rulings and regulations; (7) draft press releases; (8) draft speeches and testimony; (9) draft matters concerning audits; (10) draft Notices of Public Hearings and Notices of Proposed Rulemakings; and (11) miscellaneous drafts.

### 2. Policy Documents

This group of documents consists of those identified by DOE as expressing their authors' opinions, recommendations, or analyses of various regulatory or enforcement policies or other agency positions. DOE asserts that all withheld information was subject to further review and concurrence before final decisions were reached. The first Weiner affidavit divides this group of documents into two subcategories: documents created by Regional Office personnel and documents generated at the National Office level. One additional document is an inter-agency memorandum from the Environmental Protection Agency to a DOE predecessor agency concerning the impact of a certain energy proposal on environmental quality.

Exxon argues that various documents were not properly withheld on grounds that they contain factual material, that no specific deliberative process has been identified, and that they represent "working law." These challenges are discussed below with respect to the individual withheld documents.

■■■ Exxon also asserts that withheld material must be disclosed because the need for secrecy allegedly no longer exists with respect to old documents or documents concerning areas which DOE no longer has authority to regulate. It cannot be said that the documents in question are so old as to render the privilege moot. Moreover, the applicability of the privilege does not turn on the agency's present ability to engage in the type of rulemaking to which the deliberations in question were relevant. Agency employees most certainly would be inhibited from frank deliberation if their statements could be made public instantaneously upon the agency's happenstance loss of jurisdiction over the subject matter of their deliberations. The privilege protects the *deliberations*, not the agency *function* prompting them.

DOE has shown that the nondisclosed policy documents for the most part properly fall within the deliberative process privilege. See Part IV below.

### 3. Enforcement Documents

■■■ These documents have been identified by DOE as containing their authors' opinions, recommendations, or advice with respect to audits, enforcement matters, or similar proceedings directed at particular regulated firms. According to DOE, these documents were subject to further review and concurrence before final decisions were reached. The first Weiner affidavit groups them into three subcategories reflecting

the privilege it may be withheld where disclosure would reveal exempt matter.

the levels within the enforcement process at which they were generated: those created by auditors or investigators, those written at the Regional Office level, and those made by National Office personnel.

Exxon generally makes the same challenges with respect to these documents as it poses to the withheld policy and draft materials. It also asserts that documents anticipating certain enforcement actions that ultimately were never taken (for example, memoranda concerning proposed NOPVs that ended up not being issued) must be disclosed under the holding of *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).

Exxon's reading of that case, however, is wrong. There, the Supreme Court ruled that certain advisory memoranda either were or were not "final opinions" subject to disclosure on the basis of whether or not they advised further legal action against a party. "Advice and Appeals Memoranda" that explained decisions of the NLRB General Counsel not to file an unfair labor practices complaint were final opinions made in the adjudication of cases in that they had the effect of finally denying relief to the charging party—they were the last word on the subject. Advice and Appeals Memoranda which directed the filing of a complaint, on the other hand, were not final determinations of cases, and therefore were not necessarily subject to disclosure under FOIA. 421 U.S. at 155–60, 95 S.Ct. at 1518–21. Accordingly, the fact that a memorandum concerns an enforcement action that was never taken does not compel its disclosure under the rationale of *NLRB v. Sears*.

### B. Work-Product and Attorney-Client Privileges

DOE asserts that 26 enforcement documents are exempt from disclosure on the basis of the attorney work-product privilege as well as the deliberative process privilege. They fall within four subcategories: (1) memoranda concerning various firms that disputed NOPVs issued to them and written when DOE was considering issuing PROs or ROs to those firms, (2) documents prepared following the issuance of a NOPV to a firm and "in contemplation of further litigation", (3) a draft complaint in the "issue letters" (documents which DOE asserts were similar in function to, and have been superseded by, NOPVs) disputed by the receiving firms. Document 491, a portion of a memorandum from one of the agency's Attorney-Advisors to a Deputy Regional Administrator concerning the attorney's view of the legal sufficiency of the agency's case in the enforcement action against Exxon, has been withheld under the privilege for confidential attorney-client communications.

■■■ The work-product privilege applies to "memoranda prepared by an attorney in contemplation of litigation which set forth the attorney's theory of the case and his litigation strategy." *NLRB v. Sears*, 421 U.S. at 154, 95 S.Ct. at 1518. For the document to have been prepared "in contemplation of litigation," "at the very least, some articulable claim, likely to lead to litigation, must have arisen." *Coastal States*, 617 F.2d at 865. "[T]he agency must establish in its affidavits or indexes that a specific claim had arisen, was disputed by the company, and was being discussed in the memorandum." *Id.* at 866.

Exxon challenges DOE's assertions of privilege on two basic grounds. First, it contends that the privilege should not apply to a work product created for *administrative* litigation—a position it asserts DOE has taken in other cases. Yet it was ruled in *Texaco* that a memorandum concerning a decision whether to issue a NOPV fell within the privilege. 4 Energy Mgt. ¶ 26,302 at 28,345. In any case, administrative litigation certainly can beget court litigation and may in many circumstances be expected to do so. Second, it argues that the documents at issue were not truly created "in contemplation of litigation" in that they were prepared at nonadversarial stages when the possibility of litigation remained an open question. This issue, like the first, may only be decided on

a document-by-document basis and therefore is so addressed below.

Because the deliberative process privilege applies to the document for which the attorney-client privilege is asserted and most of the documents claimed to be work-product material, the applicability of the latter two privileges to such documents need not be, and generally is not, discussed.

### IV. Releasability of Specific Documents

The following documents are identified by their numbers in the *Vaughn* index. They are not sequential inasmuch as certain documents either are no longer disputed or had their status determined in the enforcement action. The format used herein follows that used by the judge in his January 22, 1982 order in that case: a notation of "Privileged" indicates that the particular document or portion thereof may be withheld by DOE while a notation of "Release" indicates that the agency is required to disclose that document or portion thereof to Exxon. Where the specific basis for the privilege is not identified, the document is protected by the predecisional, deliberative process privilege.

240. Privileged. This enforcement document is a confidential cover memorandum forwarding a RO to the Office of General Counsel in a case where a NOPV had been disputed. It contains the author's opinions. Both the work-product and deliberative process privileges apply.

242. Privileged. This is a draft RO. The final version is publicly available. Although the author is not identified, the document clearly is of a predecisional, deliberative nature.

244. Privileged. This is a draft of a proposed speech to be given at a seminar. Although the author is not identified, the document clearly is of a predecisional, deliberative nature.

246. Privileged. This is a draft Inquiry Memorandum issued to a petroleum firm, containing opinions pertinent to proper documentation of an audit. Although the author is not identified, the document clearly is of a predecisional, deliberative nature.

255–57. Release. These three documents, whose author or authors remain unknown, analyze various agency regulations and rulings. There is no indication as to what decision they are antecedent and therefore cannot be said to be predecisional. Moreover, as they appear only to explain the rulings and regulations, they are not deliberative.

261. Privileged. This is a cover memorandum forwarding a draft NOPV. It therefore is a predecisional, deliberative document on the same basis as the draft material. *See Pennzoil v. Department of Energy*, 4 Energy Mgt. ¶ 26,340 at 28,606 note "*" and accompanying text.

263. Privileged. This is a draft of a Decision and Order.

264. Privileged. This is a request from an area manager and an auditor for assistance from the Regional Counsel concerning the treatment of certain types of unitized property. It is clearly predecisional because it anticipated further audit procedures following receipt of the requested advice. It is deliberative inasmuch as it sets forth the authors' thoughts on how they might proceed. The analysis of rulings or regulations contained within the memorandum does not constitute "working law" as the memorandum was transmitted to a higher decisionmaking level within the agency.

265. Privileged. This is a draft RO. Although the author is not identified, the document clearly is of a predecisional, deliberative nature.

266. Privileged. This is a redraft of a RO. Although the author is not identified, the document clearly is of a predecisional, deliberative nature.

270. Privileged. This is one page of an auditor's notes concerning regulations governing the determination of a BPCL. Although the author is not identified, the document clearly is of a predecisional, deliberative nature, as it shows the auditor's thoughts in determining how to proceed

with the audit. The analysis of rulings or regulations contained within the memorandum does not constitute "working law" as the memorandum did not originate at a high decisionmaking level within the agency—it clearly represents only the opinions of the auditor.

271–72. Privileged. These are two draft ROs. The final version of the drafts has been released.

273. Privileged. This is a portion of a draft of an audit plan. Although the author is not identified, the document clearly is of a predecisional, deliberative nature.

275. Privileged. This is a document transmitted by a national office official to regional administrators discussing issues impeding resolution of compliance cases. It evidently served to solicit opinions as to clarifications that might be made in the regulations or other changes that might help to expedite case resolution. Accordingly, it is not in the nature of "working law."

278. Privileged. This is a draft of a Decision and Order. Although the author is not identified, the document clearly is of a predecisional, deliberative nature.

279. Privileged. This is a draft of an intra-agency memorandum concerning how a particular compliance matter should proceed. Even the final version of this memorandum probably would be privileged as a predecisional, deliberative document.

281, 281A, 281B. Privileged. These documents are a one-page Compliance Action Memo forwarding the other two documents, a draft cover letter to accompany a NOPV and the draft of that NOPV. The final version of the NOPV has been released. The Compliance Action Memo is a predecisional, deliberative document on the same basis as the draft material.

282–83. Privileged. This is an intra-agency memorandum from a Deputy General Counsel to the Administrator of the Economic Regulatory Administration concerning the author's comments and opinions on a proposed rule ultimately adopted and published in the Federal Register.

There is nothing to cast doubt on DOE's assertion that any unprivileged material is not reasonably segregable.

291. Release. This is a draft of proposed language and contents of a seminar speech to be presented by an area manager. The author is not identified, nor are any circumstances of the giving of the speech indicated. Accordingly, there is no basis for determining whether this is a "draft" or the final text of the speech itself.

292. Privileged. This is a draft memorandum seeking advice from the National Office. Although the final version is not identified as released, even that would probably be privileged as the draft clearly is of a predecisional, deliberative nature.

294–95. Privileged. These are two drafts of a "Notice of Proposed Rulemaking and Public Hearing" on a specific regulatory question.

296. Privileged. This is a draft NOPV.

297. Release. This is a draft of proposed language and contents of testimony to be presented by an unidentified person regarding the Energy Policy and Conservation Act. The author is not identified, nor are any circumstances of the giving of the testimony indicated. Accordingly, there is no basis for determining whether this is a "draft" or the final text of the testimony itself.

298. Release. This is identified as a draft entitled "III. Description of Relevant Price Regulations." Neither the author nor the existence of any final version is identified, nor is there any other basis upon which to determine where it fits in the deliberative process. It appears to be a simple description of existing law.

299–300. Privileged. These are two non-identical copies of a four-page memorandum concerning production and sale of a certain type of oil. They contain the author's personal opinions and recommendations in the course of deliberations on what formal position the agency should take on the matters in question. There is nothing to cast doubt on DOE's assertion

that any unprivileged material is not reasonably segregable.

301. Release. The author of this draft is not identified. Nor is there any other basis upon which to determine where this document fits in the deliberative process.

303–05. Privileged. These are three non-identical drafts of a NOPV. The final version of the draft has been released or is publicly available.

307. Privileged. Although this draft press release is postdecisional as to the news item (issuance of a NOPV) discussed within, it is predecisional as to the agency's statements in the press release concerning its action.

309, 309A. Privileged. These are draft enforcement documents and accompanying memoranda.

311. Privileged. Withheld are portions of a report of a Compliance Issues Committee meeting. They concern the participants' deliberations on matters of defining "property" and computing BPCLs in certain situations.

312. Privileged. Withheld are portions of a one-page memorandum discussing recommendations and opinions as to whether a NOPV should be issued or exceptional relief granted. The final NOPV is publicly available.

313. Privileged. Withheld are portions of a three-page memorandum containing the author's analysis and opinions as to the treatment of a particular firm's oil leases.

314. Privileged. Withheld are portions of a one-page memorandum stating opinions of compliance attorneys as to property determinations in a particular case.

315. Privileged. The withheld material contains issues and the author's analyses concerning a proposed issue letter.

316, 316A, 316B. Privileged. The withheld material consists of a draft RO and a draft cover memorandum.

318–321A. Privileged. These are four drafts of a NOPV, the final version of which is publicly available.

322. Privileged. This is a draft of testimony for an appearance before a particular House subcommittee considering an agency request to extend certain pricing authority. It contains the author's recommendations and was transmitted between three identified agency employees, thereby indicating that it was subject to further deliberation.

323. Privileged. This memorandum contains the author's opinions and recommendations with respect to a proposed NOPV.

325. Privileged. This two-page memorandum contains the author's opinions as to certain problems in the regulations, suggestions for the language of a ruling, and recommendations for computing certain BPCLs. See also discussion accompanying Document No. 275.

327–29. Privileged. These three non-identical documents contain the author's comments on a proposed NOPV. Portions of the documents have been released, and the NOPV is publicly available.

330–32. Privileged. The withheld portions of these documents concern the author's recommendations in regard to a proposed Consent Order, the final version of which is publicly available.

333. Privileged. The withheld portions concern the author's views as to the sufficiency of a particular case.

335–36. Privileged. These are drafts of an Exceptions and Appeals Decision and Order.

337, 337A. Privileged. These are a cover letter and a draft NOPV. The final NOPV is publicly available.

338–39. Privileged. These are two drafts of a Consent Order, the final version of which is publicly available.

340–42. Privileged. These are three non-identical copies of a memorandum requesting a precedent determination of a property issue involved in a particular case in which the producer disputed a NOPV and indicated its intention to proceed through administrative and, if necessary, court proceedings. The work-product privilege applies.

345–46. Privileged. These are drafts of a Decision and Order.

347. Release. This is an undated analysis of certain regulations. The author is not identified, nor is it indicated for what "report" it contains "proposed tentative language." The relevant deliberative process cannot be determined.

348, 348A, 348B. Privileged. These are a draft NOPV and associated documents. The final NOPV is publicly available.

350–56. Privileged. These are seven drafts containing the author's suggestions for amendments to certain regulations. Although some of the authors are not identified, each document clearly is of a predecisional, deliberative nature. The final version has been released to Exxon.

362. Privileged. The withheld portions concern opinions and recommendations concerning a proposed RO.

363. Privileged. The withheld portions contain an employee's comments on a proposed NOPV, the final version of which is publicly available.

364. Privileged. Withheld are portions of an audit report concerning Shell Oil Company. The withheld material consists of opinions and recommendations of auditors to their superiors as to whether the agency should pursue the company for violations.

366. Privileged. The withheld portions of this two-page memorandum concerning a proposed NOPV state the author's views and whether he concurs with those of other employees.

376. Privileged. This four-page document contains the author's comments and recommendations on a proposed rulemaking. There is nothing to cast doubt on DOE's assertion that any unprivileged material is not reasonably segregable.

377. Release in part; privileged in part. Most of the withheld portions of this audit report contain agency employees' analysis and opinions prior to final action. Page 3, ¶ 6, however, contains the author's analysis of relevant regulations; as this portion is not deliberative, it alone shall be released.

379. Privileged. The withheld portions of this memorandum concerning a proposed RO contain the author's views and recommendations on the case.

380. Privileged. The withheld portions state the author's recommendations and opinions preceding final action.

381–82. Release. There is no indication as to what deliberative process this memorandum refers. It simply states the author's opinion as to the application of regulations to a hypothetical question.

383. Privileged. The withheld portions of this "Summary of Audit Reports" consist of the analysis and opinions of compliance staff and the author prior to final action.

384, 384A, 384B. Privileged. This withheld material includes drafts of a letter and a RO in a particular case and the first sentence of a one-page memorandum on the case from an employee in the Office of General Counsel to an enforcement official. The sentence withheld from the memorandum indicates the opinion of the author's office as to whether the proposed RO was appropriate under the circumstances and was not a final decision.

385–86. Privileged. These are two non-identical copies of a one-page memorandum concerning a proposed RO, portions of which were withheld because they contain the author's preliminary opinions and text of the proposed RO.

387. Release. The withheld material contains the author's opinion as to the application of BPCL regulations to hypothetical factual situations. Yet because neither the author nor the recipient are identified and there are no other indications as to the place this memorandum assertedly had in the deliberative process, there is no basis upon which to sustain the privilege.

388. Release. The withheld portions of this memorandum from an Assistant Regional Counsel to an area manager concern opinions as to the legal sufficiency of violations alleged in a NOPV and application of various legal principles relevant to the

case. The direction in which this document flowed and the nature of its content indicate that it constitutes "working law" disclosable under *Coastal States,* 617 F.2d at 867–68.

390. Privileged. This is a draft Notice of Proposed Rulemaking and Public Hearing on a particular issue.

391, 391A. Privileged. These are a draft Interpretation and a cover letter transmitting the draft.

392, 392A. Privileged. These are a draft response to a Request for Interpretation and accompanying routing slip.

393. Privileged. The withheld portions contain the author's opinions and recommendations.

394. Privileged. This is a Regional Office level memorandum already released in large part. The two withheld sentences express the author's opinion regarding a policy decision concerning computation of BPCLs in certain cases.

395. Privileged. The withheld portions contain the author's suggestions to national level officials regarding revisions to an instructional manual.

396–97. Privileged. The withheld portion of this memorandum from auditors to their area manager reflects the authors' opinion as to whether the audited firm's property classification comported with regulations.

399. Privileged. This is a memorandum to a superior the withheld portions of which contain the author's opinions and recommendations.

405. Privileged. This is a memorandum from a regional-level official to a national-level official containing the author's recommendations in regard to a proposed NOPV.

406. Privileged. Although its author is not identified, it is evident that this is a memorandum from an investigative staff employee to a higher level. The withheld portions contain the author's opinions and recommendations. The brevity of the withheld portions and their context indicate that any factual material is not reasonably segregable.

407–10. Privileged. The withheld portions of these documents reflect recommendations of regional officials made at a meeting with the Office of General Counsel.

413. Release. This is a memorandum withdrawing a Regional Office's request for a ruling from the Office of General Counsel in a certain case. The withheld portions reflect the author's analysis of the Regional Office's property determination in the case, which evidently was a final decision on the matter.

414–418. Privileged. These are five drafts of Ruling 1977–2 and associated cover memoranda.

420. Privileged. This document contains opinions of regional-level employees as to a certain proposed rulemaking.

421, 421A. Privileged. The withheld portions consist of drafts of Consent Orders and of a NOPV.

422–35. Privileged. These are drafts of a "Notice of Public Hearings and Opportunity for Written Comments" in regard to a specific, identified issue.

436. Privileged. The withheld portions constitute the preparer's analysis and opinions of the audits discussed in the released portions of the document. Although the author is not identified, the document clearly is of a predecisional, deliberative nature as it appears to have been created by an audit-level employee for review by superiors.

437–438A. Privileged. The withheld portions are draft documents pertaining to a "Further Notice of Proposed Rulemaking and Public Hearing" on a particular issue.

439–41. Privileged. The withheld paragraph discusses recommendations relevant to a proposed rulemaking.

442. Privileged. The three withheld sentences of this audit report contain the auditors' conclusions and recommendations to their superiors as to the firm's compliance with regulations.

443. Release. The withheld portions of this memorandum from Regional Counsel to an Area Manager constitute "working law" under *Coastal States,* 617 F.2d at 867–68.

444. Privileged. This is an investigator's report concerning a firm which had disputed a NOPV issued to it. The withheld portions contain opinions of author and other agency personnel as to various matters relevant to the proceedings against the firm. Both the deliberative and work-product privileges apply.

447–48. Privileged. These are two drafts of a NOPV.

453–54. Privileged. The withheld portions consist of an employee's recommendations to his superior and analyses of the agency's litigation strategy against a firm which had alleged certain "defenses" in disputing an issue letter. Both the deliberative and work-product privileges apply.

455. Release in part; privileged in part. Most of the withheld portions of this enforcement document consist of the author's opinions and recommendations to his superior. The withheld part of the first sentence of page 1, ¶ 1, containing the author's identification of the issue to be discussed is not deliberative and therefore this portion only shall be released.

457. Release. This analysis of new regulations by a national-level official is not deliberative.

460, 460A. Privileged. These cover memoranda by a field employee precede entry of a final Consent Order and contain the author's views relevant thereto.

462. Privileged. The withheld portions contain the author's opinions and recommendations to a higher-level official.

463. Privileged. The withheld portions consist of draft proposed regulatory amendments. Although the author is not identified, the document clearly is of a predecisional, deliberative nature.

464. Privileged. Withheld are portions of an Investigation Report otherwise largely released. Although the author is not identified, the document clearly is of a predecisional, deliberative nature.

467. Privileged. This is an inter-agency memorandum from an Environmental Protection Agency official to DOE. The one withheld sentence is the author's discussion of the effect of a proposal of the latter agency on environmental quality. It was part of the deliberative process leading to a final decision by DOE.

468–69. Privileged. The memoranda contain opinions and recommendations of the author.

476. Privileged. The withheld portions contain the author's analysis and opinions to a superior.

477. Privileged. The withheld portions are recommendations of various compliance offices as to the definition of BPCL and computation of the unit BPCL. They clearly are part of the deliberative process leading to final action on those matters.

478–79. Privileged. These are draft materials. Although the authors are not identified, the documents clearly are of a predecisional, deliberative nature.

480, 480A, 481, 481A. Privileged. These are drafts of a NOPV and associated transmittal memoranda. Most parts of the latter documents have been released. The final NOPV is publicly available.

482, 482A–D. Privileged. These are five non-identical documents concerning a draft RO.

483. Privileged. The withheld portions concern the author's opinions and recommendations to his superior concerning alleged violations and other matters relevant to a particular draft NOPV.

485. Privileged. The withheld paragraph consists of the author's opinions to a superior.

489. Privileged. This is a draft NOPV. The final version is publicly available.

490. Privileged. The two sentences withheld from this three-page document contain the auditors' conclusions in regard to a specific audit.

491. Privileged. The withheld portions of this confidential memorandum from an attorney advisor to a deputy regional administrator contain the author's legal advice and recommendations as to a specific case. This clearly is privileged deliberative matter and may also fall within the attorney-client privilege.

493–97. Privileged. These are five non-identical copies of a five-page memorandum concerning a proposed NOPV. The withheld portions contain the author's opinions and analysis.

498. Privileged. The withheld portions of this audit report contain the auditors' opinions as to whether the audited firm was in violation of regulations and as to related matters.

499. Privileged. See discussion for documents 493–97.

500–01. Privileged. The withheld portions concern regional employees' perceptions of issues impeding compliance cases and their recommendations. Although the authors are not identified, the documents clearly are of a predecisional, deliberative nature.

502–04. Privileged. See discussion for documents 500–01.

510–16. Privileged. The withheld portions contain the opinions and recommendations of the author to his superior.

517–20. Privileged. These are transmittal memoranda and draft documents. The final rulemaking they anticipated was published in the Federal Register.

521. Privileged. This is a draft NOPV.

524–27. Privileged. See discussion for document 483.

528–33. Privileged. The withheld portions summarize privileged portions of documents 524–27.

538. Privileged. The withheld material includes the opinions of the drafters of a proposed NOPV. See also discussion for document 483.

542. Release. There is no indication as to what deliberative process this document relates.

544, 544A. Privileged. The withheld portions consist of the author's opinions and analyses of problems and issues involving compliance cases.

546. Privileged. This is a draft document. Although the author is not identified, the document clearly is of a predecisional, deliberative nature. The final version of the draft has been released.

549. Privileged. This is a draft document. The final version of the draft has been released or is publicly available.

550. Privileged. This is a memorandum concerning a proposed RO containing the author's recommendations as to the order's contents.

551. Release. The withheld paragraph simply summarizes the areas in which questions occurred at a seminar with the oil and gas industry.

553. Privileged. The three sentences and portions of a fourth contain the author's opinions and recommendations to his superior.

558. Privileged. The paragraph withheld from this Inquiry Memorandum contains the author's analysis and opinions.

559–60. Release. It has not been established that the withheld portions were part of a deliberative process. The recipients of the documents have not been identified, although DOE indicates that the author was a national office employee. The withheld portions analyze existing regulations and state proper procedures.

561. Privileged. This document contains the author's recommendations and opinions concerning a proposed NOPV. See discussion for document 483.

562. Privileged. The withheld portions of this cover memorandum forwarding a case file for a Consent Order to an Area Manager contain the author's views and analyses anticipating further action on the order. See also discussion for documents 460, 460A.

563. Privileged. This is a draft Interpretation. Although the author is not identified, the document clearly is of a predeci-

sional, deliberative nature. The final version of the draft has been released or is publicly available.

566. Privileged. The withheld portions contain the author's analyses and opinions concerning matters relevant to a particular audit.

567, 567A. Privileged. See discussion for documents 281, 281A, 281B.

568. Privileged. This is a portion of a draft RO. Although the author is not identified, the document clearly is of a predecisional, deliberative nature. The final version of the draft has been released or is publicly available.

569. Privileged. This document contained recommendations of the author concerning treatment of a firm's unit and the firm's BPCL calculation. Although the author is not identified, the document appears to be of a predecisional, deliberative nature. The subject matter tends to suggest that it was created by an audit or enforcement employee in the field. The fact that it was handwritten suggests that it was predecisional and deliberative.

570. Privileged. This is a draft NOPV. The final version of the draft has been released or is publicly available.

571. Privileged. This is a draft RO.

572. Privileged. This is a draft RO.

573. Release. The withheld page of this anonymous, national-level document presents an analysis of the computation of a BPCL in a hypothetical case.

574. Privileged. The withheld pages are portions of a proposed form to implement a self-reporting system for crude producers and crude resellers. They contain proposed language for the form and the author's analysis regarding unit property treatment and BPCL calculation.

579. Privileged. This memorandum from an assistant Regional Counsel to the Regional Counsel contains the author's views as to a NOPV penalty to be imposed on a firm.

580. Privileged. The withheld portions contain the author's opinions and analysis regarding a particular case.

■■■■ The remaining defendants, James R. Schlesinger, Secretary of Energy at time this cause was instituted, and John Treanor, Information Access Officer of the Department of Energy, individual agency officials sued in their official capacities, and not proper party defendants in this cause, shall be dismissed in this dispute against the Department of Energy. *See, e.g., Canadian Javelin, Ltd. v. Securities & Exchange Comm'n*, 501 F.Supp. 898, 904 (D.D.C.1980).

An appropriate Order accompanies this Memorandum Opinion.

### ORDER

In accordance with the accompanying Memorandum Opinion, it is, by the Court, this 28th day of September, 1983,

ORDERED, that plaintiff's motion for partial summary judgment shall be granted in part and denied in part, as provided in the Memorandum Opinion, and it is

FURTHER ORDERED, that the motion of defendant, Department of Energy, for summary judgment shall be and hereby is granted in part and denied in part, as provided in the Memorandum Opinion, and it is

FURTHER ORDERED, that defendant, Department of Energy, shall release to plaintiff, within 30 days of this date, those documents designated to be released in the Memorandum Opinion, and it is

FURTHER ORDERED, that this action is dismissed as to the defendants James R. Schlesinger, Secretary of Energy, at time of filing this cause, and John Treanor, Information Access Officer of the Department of Energy.

This cause stands closed.